IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


BRUCE W. KOENIG, #288937                    *
                        Plaintiff,
        v.                                  *   CIVIL ACTION NO. JFM-13-3911

STATE OF MARYLAND, *et al*.                 *
                        Defendants.
                                          *****


MEMORANDUM

Procedural History

        The original complaint for injunctive relief and damages was received for filing on

December 26, 2013. The remaining plaintiff[1] alleges that he converted to Judaism and that

defendants at the North Branch Correctional Institution ("NBCI") changed the kosher diet

menus, by removing all meat and replacing it with a 100% vegetarian diet.  He contends that the

policy change was made to discourage inmates from signing up for the kosher diet and has acted

to limit the number of kosher diet entrees served.  Plaintiff further alleges that half of the kosher

entrees served are "so foul smelling and tasting as to be inedible" and the meals are never served

hot.  ECF No. 1.   He next claims that the areas where the meals are cooked and trays are

prepared at NBCI are unsanitary.  Plaintiff additionally asserts that from April to December of

2013, defendants acted to openly voice their hatred of the Jewish religion and have discriminated

against Jewish inmates by not serving them desserts and condiments available to other NBCI

inmates.  Plaintiff also contends that he has been targeted for "desecration" of his religious diet

tray.  He further claims that his administrative remedy procedure ("ARP") grievance forms were

---

[1]        On June 27, 2014, plaintiff Larry Horton was dismissed from the complaint for the failure
to comply with court order.  ECF No. 15.

thrown away instead of being given to appropriate staff.  In his amended complaint, plaintiff additionally alleges that religious study sessions are only authorized to occur once a month and are often cancelled and religious texts are unavailable.[2]  ECF No. 10.  He alleges violations under 42 U.S.C. § 1983 and the "substantial burdening [of his] religious exercise" under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").  ECF Nos. 1 & 10.

On October 24, 2014, defendants filed a motion to dismiss or, in the alternative, motion for summary judgment.  ECF No. 28.  Although afforded several extensions of time, plaintiff has not filed a response.[3]  The case is ready for consideration and defendants' motion, construed as a motion for summary judgment, may be resolved without oral hearing.  *See* Local Rule 105.6. (D. Md. 2014).

Standard of Review

Because matters outside the pleadings will be considered, defendants' motion shall be treated as a motion for summary judgment.  Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides that: "The court shall grant summary judgment  if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

---

[2]    An amended complaint was received for filing on February 11, 2014.  ECF No. 10.  The document reiterates the claims raises in the original complaint and seeks to add the names of two other inmates as parties.  Leave to amend to add these two individuals as plaintiffs was denied.  ECF No. 15.

[3]    Plaintiff was granted three separate extensions and was to file an opposition by May 7, 2015.  Plaintiff has been provided over seven months to file a response and has not filed an opposition.

*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

The "party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to ... the nonmovant, and draw all reasonable inferences in [his] favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

In *Anderson*, 477 U.S. at 249, the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp.*, 477 U.S. at 322–23. Therefore, on those issues on which

3

the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Analysis

Defendants assert that NBCI maintains a religious dietary program under which inmates with dietary mandates receive meals that conform to the "minimum dietary requirements" of Jewish orthodoxy.   ECF No. 28-1.   The requirements include the separation of food items and utensils for food preparation, washing, and storage.   Meals under the religious diet program are vegetarian in nature and each inmate working in the kosher food preparation area and all officers are required to review the applicable religious diet program.   They state that while confined at NBCI, plaintiff's meals were provided to him in compliance with prison regulations and to ensure compliance with "kosher principles"  and sanitary requirements, monthly inspections of the kosher kitchen were conducted.    ECF No. 28-2, Kammauf Decl.    Moreover, they affirm, that plaintiff's meals were served to him in compliance with the sanitation and uniformity required by prison regulations.   *Id*.

Defendants further explain that since April 29, 2013, NBCI was placed on varying lengths of "modified movements" or lockdown due to an increase in the number of inmate-on-inmate assaults, as well as inmate-on-staff assaults.[4]   ECF No. 28-4, Gutillo Decl. and ECF No. 28-5, White Decl.   Defendants affirm that during this time, inmate meals were often served as bagged lunch or hot trays brought to the housing units.   Inmates were provided their meals in their cells.   In such cases, all kosher meals arrived in housing unit 4 on Styrofoam trays completely sealed by cellophane wrap.   The meals are removed from the dietary cart and then

---

[4]        Defendants point to an inmate-on-staff assault in August of 2013, that resulted in NBCI being placed on lockdown through March of 2014.   ECF No. 28-5, White Decl.

handed to inmates through the cell pass-through.   ECF No. 28-4, Gutillo Decl.   Defendant

Gutillo denies throwing, shaking or "squishing" the meal items on plaintiff's tray.  *Id.*

Defendants next maintain that agency directives provide for religious service

programming to afford "inmates of all faiths with reasonable and equitable opportunities to

pursue religious beliefs and practices…"  ECF No. 28-6.  Congregate worship and study forums

are to be made available on a weekly basis unless the religion calls for less frequent congregation

or institutional resources cannot accommodate weekly congregation.  *Id*.  Defendants affirm that

no religious services were cancelled at NBCI during April of 2013 and during the months of

April through July of 2013, Jewish religious services were scheduled for every Saturday at noon

with the exception of June 29, 2013, because the institution was on lockdown.  ECF No. 28-7,

Lamp. Decl. & ECF No. 28-8.  On August 5, 2013, NBCI was placed on lock down until March

of 2014.  ECF No. 28-5.[5]

According to defendants, inmates may request access to religious materials by sending a

request slip to the Chaplain's office for religious materials on hand (Bibles, cards, and some

religious literature) or a religious material request form for materials that need to be ordered.

According to NBCI Chaplain Kevin Lamp, plaintiff did not submit any request slips or religious

material request forms in 2013.  ECF No. 28-7, Lamp. Decl.

Defendants acknowledge that in November 2013, during the NBCI lockdown, the process

for turning in ARPs was "altered slightly" to require the inmate to turn in the grievance to the

day shift sergeant or officer-in-charge on the tier.   They maintain that from April 1, 2013, to

October 16, 2013, plaintiff filed a total of eight ARPs.   ECF No. 28-5.

Defendants argue that on May 26, 2013, plaintiff filed an administrative remedy

procedure ("ARP") grievance regarding his kosher meals, but as it contained multiple unrelated

---

[5]        Plaintiff was transferred from NBCI to WCI on January 15, 2014.  ECF No. 28-5.

issues it was dismissed for procedural reasons two days later.  ECF No. 28-9.  Plaintiff was instructed to re-file the ARP with one issue.   On May 30, 2013, he filed another ARP alleging that his prior ARP raised a claim of "religious persecution."  That ARP was too dismissed on June 3, 2013.  An appeal was filed to the Commissioner, who denied same on June 18, 2013.  Plaintiff filed a subsequent appeal to the Inmate Grievance Office ("IGO") from the Commissioner's decision.   *Id*.  The IGO appeal was administratively dismissed on August 4, 2014, for the failure to properly exhaust the ARP process.  ECF No. 28-10, Oakley Decl.

### Mootness

Under § 1983, an actual controversy must exist at all times while the case is pending.  *See Steffel v. Thompson*, 415 U. S. 452, 459 n. 10 (1974).  It is possible for events subsequent to the filing of the complaint to make an injunctive relief request moot.  *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).  This is so even though such a case presented a justiciable controversy at an earlier point in time and an intervening event rendered the controversy moot.  *See Calderon v. Moore*, 518 U.S. 149, 150 (1996).  Indeed, "[w]here on the face of the record it appears that the only concrete interest in the controversy has terminated, reasonable caution is needed to be sure that mooted litigation is not pressed forward, and unnecessary juridical pronouncements on even constitutional issues obtained…"  *See Lewis v. Continental Bank* Corp, 494 U.S. 472, 480 (1990).

To the extent that plaintiff seeks injunctive relief, *i.e.* staff training and the cessation of violations at NBCI, the claim for relief was mooted when he was transferred from NBCI in January of 2014.  No equitable relief may be granted.

**Constitutional Claims**

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  With respect to the free exercise of religion, prison inmates retain a right to reasonable opportunities for free exercise of religious beliefs without concern for the possibility of punishment. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972).  That retained right is not unfettered.  Prison restrictions that impact on the free exercise of religion, but are related to legitimate penological objectives do not run afoul of the constitution.  *See Turner v. Safely*, 482 U.S. 78, 89– 91 (1987).  The test to determine if the restrictions are justified requires examination of whether or not there is a rational relation between the asserted governmental interest and the regulation in question.  In addition, this court must examine: whether there are alternative means of exercising the right asserted; whether accommodation of the right will impact on the orderly operations of the prison; and whether readily available alternatives to the regulation would be less restrictive.

"The Free Exercise Clause of the First Amendment forbids the adoption of laws designed to suppress religious beliefs or practices." *Morrison v. Garraghty,* 239 F.3d 648, 656 (4th Cir. 2001). This encompasses policies that impose a substantial burden on a prisoner's right to practice his religion.  *Lovelace v. Lee,* 472 F.3d 174, 198 & n. 8 (4th Cir. 2006). Under the Free Exercise Clause a prisoner has a clearly established right to a diet consistent with his religious principles.  *Wall v. Wade*, 741 F.3d 492, 498 (4th Cir. 2014).

An additional consideration in this case is the standard provided by the Religious Land Use and Institutionalized Persons Act ("RLUIPA").  The act provides in part that:

> [n]o government  shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability,

> unless the government demonstrates that imposition of the burden on that person--(1) is in furtherance of a compelling government interest;  and (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a) (2000).

A "substantial burden" is one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs," or one that forces a person to "choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion ... on the other hand," *Lovelace*, 472 F.3d at 187 Therefore, for purposes of RLUIPA, a substantial burden on religious exercise occurs when a state or local government, through act or omission, puts substantial pressure on an adherent to modify his behavior and to violate his religious beliefs. *Id.*

Where, as here, plaintiff has failed to establish that the denial of kosher meals or the infrequency of religious study sessions and access to religious material, if any, caused a substantial burden on his ability to practice Judaism, no claim has been stated under the First Amendment or RLUIPA.[6]  Defendants' unopposed exhibits and declarations illustrate that the available religious meal plan is provided in a neutral, sanitary and uniform manner.

Further, plaintiff's claim regarding his lack of access to the ARP process fares no better. The record belies his claim as it reveals that he was able to file a number of ARPs which were

---

[6]  Moreover, the Fourth Circuit Court of Appeals has recognized the well-established principle that "inmates must be provided nutritionally adequate food, 'prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.'" *Shrader v. White*, 761 F.2d 975, 986 (4th Cir. 1985) (citations omitted).  The failure to meet an inmate's basic nutritional needs is considered cruel and unusual punishment because the inmate relies on prison officials to provide food.  Prisons and detention facilities are required to provide "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985)*.  Plaintiff does not allege that he experienced any physical harm from the alleged foul-smelling and distasteful Kosher meals or the "desecration" of his meal tray..

processed during the relevant time in question.   In any event, the law in this Circuit dictates that no constitutional entitlement to grievance procedures or access to such procedures is created merely because such procedures are voluntarily established by a state.  *See Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).  Therefore, plaintiff's issue with his ability to file grievances during the prison lockdown simply does not implicate a constitutional claim.

Conclusion

Having found no genuine dispute of material fact justifying a trial on the merits in this case, the court shall grant defendants' motion for summary judgment by separate order.

Date: June 23, 2015                              /s/
                                                 J. Frederick Motz
                                                 United States District Judge